## AFFIDAVIT OF SPECIAL AGENT JEAN DROUIN

I, **JEAN DROUIN**, depose and state that the following is true to the best of my knowledge and belief.

**Affiant's experience**

1.    I am a Special Agent with the United States Drug Enforcement Administration (DEA).  I have served in this capacity Since April 1998. I am currently assigned to the Boston, Massachusetts Division Office, DEA Task Force 2.  Prior to joining the DEA, I was employed by the Dekalb County Police Department, in Atlanta, GA, as a full time Police Officer for approximately 3 years. During my tenure as a Dekalb County Police Officer I was assigned to a street level drug unit and made over 100 drug related arrests and have debriefed numerous informants and persons relative to drug distribution.  I have a Bachelor of Arts in Criminology from the University of Southern Maine.

2.    I also have had extensive experience in the investigation of the activities of narcotics traffickers.  Since joining the DEA, I have participated in numerous narcotics investigations as a case agent and in a subsidiary role.  I have written and/or participated in the execution of numerous search warrants resulting in drug seizures, including large quantities of controlled substances; packing implements and other paraphernalia involved in the manufacture and distribution of controlled substances; large amounts of United States currency, ledger books, bank records, telephone books, receipts, drug

2

customer lists and other documents relating to the manufacturing,
transportation, ordering, purchasing and distribution of
controlled substances.  I have debriefed numerous defendants,
informants, and witnesses who had personal knowledge about
narcotics trafficking activities and the operation of narcotics
trafficking organizations.  I personally have participated in all
aspects of narcotics trafficking investigations, including
conducting surveillance, using confidential informants, acting in
an undercover capacity, and conducting court-authorized
interceptions of wire and electronic communications.

    3.    Based upon my training and experience, I am also
familiar with narcotics traffickers' methods of operation,
including the distribution, storage, and transportation of
narcotics and the collection of money that constitutes the
proceeds of narcotics trafficking activities.  I am aware that
drug traffickers commonly use cellular telephones in furtherance
of their drug trafficking activities and frequently change
cellular telephone numbers and cellular telephones in an effort
to thwart law enforcement's use of electronic surveillance.  I
also am familiar with the manner in which narcotics traffickers
use telephones, coded, veiled, or slang-filled telephone
conversations, pagers, coded pager messages, and other means to
facilitate their illegal activities.  I also am familiar with the
vernacular or street-names for users and distributors of

3

controlled substances and the methods by which such persons attempt to disguise the subjects of their conversations and operations.

**This Case**

3.   I am submitting this affidavit in support of an application for a criminal complaint charging **Benito GRULLON, a/k/a "Benny" (GRULLON)**, with possession with intent to distribute and distribution of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. 841(a)(1).

4.   This affidavit includes a summary of events before, during, and after July 30, 2003, that were described and explained to me by TFA Steven Edwards (TFA Edwards) regarding GRULLON.[1]  TFA Edwards is a member of the same DEA's Task Force Group (Group III) to which I am assigned, however, TFA Edwards is personally familiar with many of the facts/events that occurred

---

[1] TFA Edwards is a Cambridge Police Officer and has been employed as such for 18 years. For the past 14 years, TFA Edwards has been assigned to the Special Investigation Unit of the Cambridge Police Department. During his career he has participated in numerous drug investigations, including undercover drug purchases (including cocaine), surveillances of drug dealers and their drug transactions, and worked with confidential informants. TFA Edwards has been an Affiant on drug search warrants, participated in the execution of same, secretly monitored drug related conversations of drug dealers through electronic surveillance, and testified in the courts of the Commonwealth of Massachusetts as an expert witness in drug investigations. TFA Edwards has also received specialized training in the investigation of drug offenses from the Narcotics Officers Enforcement Association, Cambridge Police Academy, Massachusetts Criminal Justice Training Council, the Massachusetts State Police and the Drug Enforcement Administration. Currently, TFA Edwards is assigned to the Drug Enforcement Administration in Boston, MA as a Task Force Agent (TFA). Since November 1, 2003, he has worked with DEA's Task Force Group III investigating sophisticated drug organizations within the District of Massachusetts.

4

*both* before and during July 30, 2003 that involved GRULLON.  In
addition, TFA Edwards has also discussed GRULLON matter and the
events before, during, and after July 30, 2004 with other DEA
agents, Lynn and Peabody Police Officers, Massachusetts State
Troopers and other law enforcement personnel that have been
working on this investigation with him; reviewed oral and written
reports of conversations and meetings with a confidential source
(CS) working with DEA on the GRULLON matter; and reviewed
consensually tape recorded conversations (both in-person and
telephone conversations) involving GRULLON and a DEA confidential
source (CS) and the events of July 28, 2003 and July 30, 2003.

5.    This affidavit does <u>not</u> set forth all the facts
developed during the course of this investigation.  Rather, it
sets forth only those facts that are necessary and sufficient to
establish probable cause to believe that GRULLON has committed
the aforementioned crime described within the attached Criminal
Complaint.

**Confidential source (CS)**

6.    During the investigation of GRULLON, TFA Edwards and
other agents received valuable assistance from a confidential
source (CS) who was working with DEA.  On or about July 28, 2003,
CS met with TFA Edwards and DEA GS Harry Brady at the New England

5

Field Division offices in Boston, MA to discuss GRULLON.[2]   At
that time, CS related information about the sale and distribution
of kilogram (and smaller) amounts of cocaine in and around the
area  Lynn, Massachusetts.

**Munoz and GRULLON: cocaine dealers**

7.   Specifically, CS told TFA Edwards that (2) Colombian
males that CS knew only as "Benny" (later identified as Benito
GRULLON) and "Hector" (later identified as Hector Munoz), worked
togther to sell quantities of cocaine to customers in Lynn, MA.
CS first became aware that Munoz and GRULLON were involved in
drug dealing because Munoz had told CS that GRULLON, his brother-
in-law, traveled to New York every week to pick up 10 or more
kilograms of cocaine which he later brought back to Boston and
Lynn for re-sale.  CS also related Munoz had supplied him with
two (2) telephone numbers in case CS needed to talk with him --
(home) 781-598-1829) and (cell) 781-913-6442 - and that Munoz
operated a brown Toyota Camry (MA Reg. 4162TC).  Finally CS told
TFA Edwards that Munoz had offered to introduce the CS to GRULLON

---

[2]   Since 1993, CS has assisted the DEA in several different drug investigations. Many of
these investigations resulted in the arrest (and later conviction) of individuals as well as the seizure
of illegal narcotics. CS has a prior criminal record that includes the following entries: On September
26, 1995, CS pled guilty in U.S. District Court to one count of conspiracy to possess with intent to
distribute cocaine and one count of attempted possession with intent to distribute cocaine for which
CS received concurrent 60 month sentences. In addition, CS was paid $500 by DEA for his/her
assistance with the GRULLON investigation.

6

if the CS was ever interested in purchasing cocaine.[3]

**July 28, 2003: preliminaries to cocaine deal**

8.    On July 28, 2003, CS contacted Munoz at Munoz' cellular telephone number – 781 913-6442.  CS told Munoz that CS's "friend" was going to make a "party" and needed a "cake" for 125. In addition, CS reminded Munoz that CS had been quoted a price of "3-6" -- referring to a purchase price of $3600 for 125 grams of cocaine.  When CS asked Munoz if he could get the drugs at a cheaper price, CS was told "no way." Later in the call, CS asked Munoz whether he could get the "cake" for "Wednesday" (July 30). Munoz replied that Wednesday would not be problem but that he would call CS back to confirm.

9.    In a follow-up call the same day at approximately 3:10 p.m., Munoz told CS that they were "OKAYAMA" for Wednesday. When CS asked where they intended to do the deal, Munoz stated that the "he" (the supplier) would bring the drugs to Munoz apartment on Fuller Street.  When CS complained about the location, Munoz replied that it would be worse for him to do the deal "out" because he (Munoz) was not making any money in the deal – only

---

[3]    After conferring with CS, TFA Edwards learned through separate investigation that Munoz resided at 33 Fuller Street, 2nd floor Apartment, Lynn, Massachusetts. Likewise, MA RMV confirmed that MA Reg. 4162TC belonged to a white 1998 white Toyota Camry and was registered to "Hector Munoz," 33 Fuller Street, Lynn, Massachusetts. However, Munoz mailing address was listed on his MA Driver's License as 170 Union Street, Lynn, MA. (Later, TFA Edwards obtained a MA Driver's License photograph of Hector Munoz which TFA Edwards distributed to other agents working on this investigation.)

7

bringing CS and the supplier (Munoz' brother-in-law) together.
Munoz also told CS that the supplier would also not do the deal
in the street.  After this exchange, CS and Munoz agreed to do
the deal on Wednesday (July 30) at Munoz' apartment.  Munoz
directed CS to give Munoz an hour's notice on Wednesday so he be
ready to complete then deal.

**July 30, 2003: 125 gram purchase of cocaine from GRULLON**

        10.  After learning from CS that Munoz was prepared to
"broker" some future cocaine deal with Benny/GRULLON, TFA Edwards
directed CS to make contact with Munoz and, if possible, make
arrangements to purchase 125 grams of cocaine from *either* Munoz
and/or GRULLON.  On July 30, 2003, at approximately 2:30 p.m.,
TFA Joseph Gallarelli and TFA Edwards met with CS at a pre-
arranged location in the greater Lynn area.  At that time, TFA
Edwards directed CS to place a telephone call to Munoz' home
telephone at his 33 Fuller Street residence in Lynn - 781-598-
1829.  CS did as instructed.

        11.  After CS reached Munoz, CS told Munoz (in code) that he
wanted to purchase 125 grams of cocaine for $3600, Munoz told CS
that everything was "set" and that "Benny" (his brother-in-law) -
referring to GRULLON - had just left his apartment at 33 Fuller
street but would be returning in about 10 minutes.  After that,
MUNOZ remarked that the CS should come over to 33 Fuller Street
and meet with him and Benny/GRULLON in order to compete the deal.

8

12.   Prior to CS going to meet Munoz and Benny, TFA Edwards physically searched CS to ensure that there were no drugs, money, or other contraband on its person. (TFA Edwards found nothing on CS's person.) TFA Edwards also equipped CS with a hidden "KEL" transmitter and microphone that would serve to pick up and transmit any conversations between CS and persons that CS would talk to.  After giving CS $3600 in government funds (OAF), which CS put inside a small leather pouch or fanny pack that CS wore around his waist, TFA Edwards instructed CS to go to 33 Fuller Street, Lynn, MA and meet with Munoz and Benny GRULLON.  On route over to this address, CS was followed/surveilled by TFA Gallarelli and TFA Edwards.

**Arrival at 33 Fuller Street; drug deal carried out**

13.   At approximately 2:25 p.m., CS arrived out front of 33 Fuller Street and parked "its" vehicle.  Shortly after CS arrived at 33 Fuller Street, CS observed a light colored vehicle also approach this address and park nearby.  Over the hidden transmitter, CS told TFA Edwards (who was monitoring CS) that a male had exited this vehicle, then joined the CS at the front door of 33 Fuller Street just as Munoz opened the front door. After exchanging greetings, MUNOZ introduced the CS to the other male who was identified as "Benny."  (Later, CS confirmed with TFA Edwards that "Benny" was the same person who had parked his vehicle in front of 33 Fuller Street the same time that CS had

9

arrived.)

14. Once inside Munoz' apartment, CS and "Benny" promptly began to discuss the cost for the drugs. After brief discussion, according to CS, "Benny" reached into his pants (around the groin area) and removed a wrapped item. CS handed "Benny" the $3600 in Official Agency Funds (OAF) whereupon "Benny" began to count the money while CS examined the wrapped package containing the cocaine.

15. CS stated to "Benny" that the package looked good and if this cocaine was good quality, CS would want to purchase more cocaine from "Benny" in the future. After that, "Benny" gave the CS his cellular telephone number - 781 913-6228 - and told CS this was the number CS should use to call Benny if he wanted to buy more cocaine in the future. CS told "Benny" that CS would be calling "Benny" very soon.

**Surveillance of Brown Toyota Camry; MA Reg. 2457NR**

16. After CS and Benny had exchanged cocaine for money, CS left Munoz' apartment. As Benny was exiting 33 Fuller Street and returning to his car, TFA Edwards overheard CS reporting over the KEL transmitter the MA license plate number for the vehicle that Benny was operating - 2457NR. TFA Edwards advised surveillance units that "Benny" (one of the people that TFA Edwards overheard was involved in the drug transaction with Munoz and CS) was operating light colored sedan bearing MA Reg. 2457NR and would be

10

leaving 33 Fuller Street soon. (TFA Edwards later obtained
confirmation from the MA RMV that the vehicle bearing Reg.
24577NR was a brown, Toyota Camry sedan and related that
information to surveillance units.[4])

    17.   Sometime thereafter, surveillance observed the brown
Toyota Camry in traffic on Fuller Street in Lynn, MA.   Attempts
were made to stay up with this vehicle, however, due to the high
volume of traffic, surveillance lost sight of the brown Camry and
surveillance was terminated.

    18.   Shortly after that, TFA Edwards rendezvoused with CS at
a pre-arranged location in Lynn to debrief him about the
preceding events at 33 Fuller Street with Munoz and GRULLON.   As
soon as CS and TFA Edwards were together, CS unzipped the leather
pouch around its waist and handed TFA Edwards a green cellophane
package containing a white rock-like substance that believed to
be cocaine.   CS reported that this was the package that "Benny"
had handed him while they were together in Munoz apartment at 33
Fuller Street.   CS also related that in return for this package
of drugs, CS handed Benny $3600 in OAF.[5]

---

    [4] Registration information for the brown Toyota sedan revealed that the vehicle was
registered to Benito GRULLON, 170 Union Street, Lynn, MA. GRULLON's biographical
information included the following: DOB 10.27.58; SSN 077704121; MA DL # S53495281.

    [5] A chemical analysis of the drugs obtained from GRULLON on July 30, 2003 by CS was
completed by the DEA laboratory on August 19, 2003. The substance tested positive for cocaine
hydrochloride; its net weight was 120.7 grams.

11

## Identification of GRULLON

19.  Several days later, after learning that the brown Toyota sedan (MA Reg. 2457NR) was registered to Benito GRULLON of 270 Union Street, Lynn, MA, TFA Edwards showed CS the MA Driver's License photograph of Benito GRULLON.  CS told TFA Edwards that person depicted in the Benito GRULLON was "Benny"; the same person that had sold him 125 grams of cocaine for $3600 at Munoz' 33 Fuller Street apartment the afternoon of July 30, 2003.

## Conclusion

20.  Based upon the foregoing evidence, I submit that on July 30, 2004, there is probable cause to believe that **Benito GRULLON, a.k.a "Benny"**, possessed with intent to distribute and did distribute a quantity of cocaine, in violation of Title 21 U.S.C. §841(a)(1).


**JEAN DROUIN**
Special Agent
Drug Enforcement Administration


Sworn to and subscribed before me this _____ day of May, 2004.

**CHARLES B. SWARTWOOD, VII**
United States Magistrate Judge